IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DEUNTAE THOMAS,                    §
                   Plaintiff,      §
                                   §
v.                                 §        No. 3:21-cv-02749-L (BT)
                                   §
JOHN COLEMAN CREUZOT, et al.       §
                                   §
                   Defendants.     §

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Plaintiff Deuntae Thomas's pleadings, including two documents entitled "Affidavit of Writ of Mandamus and *Quo Warranto* for the Extraordinary Relief" (ECF Nos. 3 and 10) that contain his substantive allegations. The Court gave Thomas permission to proceed *in forma pauperis* and withheld process pending judicial screening. The Court now recommends that Thomas's requests for mandamus and *quo warranto* relief, as well as his claims for monetary damages against the State of Texas, should be dismissed without prejudice for lack of subject matter jurisdiction, and his remaining claims should be dismissed under 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief can be granted.

### Background

Thomas filed a "complaint" entitled "Affidavit of Writ of Mandamus and *Quo Warranto* for the extraordinary relief of Thomas:deuntae©" against a

variety of individuals, municipalities, and nonjural entities related to his arrest in 2021 by Dallas Rapid Area Transit (DART) police officers and his subsequent imprisonment and legal proceedings prior to the State dismissing the charges. *See* ECF No. 3. The Court issued a notice of deficiency, advising Thomas that his complaint failed to comply with Federal Rule of Civil Procedure 8(a). ECF No. 7. Thomas filed another "Affidavit of Extraordinary Writ of Mandamus and *Quo Warranto* for the Extraordinary Relief of Thomas:deuntae©," ECF No. 10[1], which is mostly the same as the original filing but without the factual background.[2] Although his pleadings are at times difficult to understand and replete with sovereign citizen terminology—a discredited and frivolous legal theory addressed below—the essence of Thomas's allegations are as follows:

1. Encounter with DART officers

In late July 2021, Thomas purchased a ticket to ride a DART bus. Wearing a mask because of COVID-19 mandates, he boarded the bus. ECF No. 3 at 5. He took off his mask to drink a beverage. ECF No. 3 at 6. A DART bus driver ordered Thomas to put on his mask. ECF No. 3 at 6. Thomas refused, noting that other

---

[1] The Court issued a Magistrate Judge Questionnaire (MJQ) to Thomas to allow him to clarify his claims. But he objected to it and offered no substantive response. *See* ECF No. 31. Since filing his original submission, Thomas has also filed a variety of "notices," most of which contain financial or tax documents related to liens, bonds, surety agreements, and the foreclosure of property. *See, e.g.*, ECF Nos. 8, 9, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29. The Court has reviewed these filings, but they do not alter its analysis or recommendation.

[2] Although an amended complaint ordinarily supersedes the original, *see King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), the Court has considered both ECF Nos. 3 and 10 for screening purposes.

passengers were not wearing masks. ECF No. 3 at 6. Thomas recorded a video of this "discrimination." ECF No. 3 at 6.

DART police officer Villafuerte ordered Thomas to get off the bus. ECF No. 3 at 6. Villafuerte did not identify himself, show his authority as a DART officer, or tell Thomas why he had to get off the bus. ECF No. 3 at 6. Thomas started to record the encounter with Villafuerte and refused to get off the bus because Villafuerte "failed to articulate a valid reason." ECF No. 3 at 6. Thomas believed that Villafuerte may have been "impersonating" a DART officer because Villafuerte did not disclose under what authority he was acting. ECF No. 3 at 6.

DART police officer A. Grimes then asked to see Thomas's fare. ECF No. 3 at 6. Thomas showed the officers his fare and continued to record the encounter. ECF No. 3 at 6.

At some point, the dispute turned to whether Thomas was required to wear a mask. ECF No. 3 at 6-7. Thomas claims that he was medically exempted from wearing one and references an executive order from Texas Governor Greg Abbott that prohibited governmental entities from mandating or requiring face coverings. *See* ECF No. 3 at 6-7. Thomas also pointed out to the officers that the bus driver and other passengers were not wearing masks. ECF No. 3 at 7. The officers continued to order Thomas to get off the bus. ECF No. 3 at 7-8. Thomas continued to refuse. ECF No. 3 at 8.

After his continued refusal to get off the bus, Villafuerte and Grimes "trespassed" Thomas; that is, they attempted to arrest him. ECF No. 3 at 8.

Thomas "valiantly" resisted the arrest. ECF No. 3 at 8. A third DART officer—officer Neal—arrived and "upon seeing the struggle" approached Thomas, pointed a gun at his stomach, and told him that he would shoot if Thomas continued to resist arrest. ECF No. 3 at 8.

Thomas stopped resisting. ECF No. 3 at 8. "They dragged" Thomas from the bus to the ground and searched him without his consent. ECF No. 3 at 8. "They" put Thomas in the squad car and searched his backpack. ECF No. 3 at 8. Thomas maintains that the officers should have seen documents from the Secretary of State for the United States of America Department of State "attesting to the fact" that he is an "American National" outside the officers' jurisdiction. ECF No. 3 at 8.

Thomas was booked in the Lew Sterrett Jail later that night. ECF No. 3 at 8. He was not read his *Miranda* rights. ECF No. 3 at 8. Nor did anyone take him to a magistrate judge immediately for an initial appearance. ECF No. 3 at 8.

2. <u>Mistreatment at the jail</u>

The alleged mistreatment continued at the Lew Sterrett Jail. Grimes "devised" with nurse practitioner Uzo A. Kunne to deprive Thomas of medical treatment for type 2 diabetes and hypertension when Thomas refused to sign a release form "in a manner and fashion to their liking." ECF. No. 3 at 8. Kunne denied Thomas access to an unspecified type of medication and instead tried to force him to ingest medication containing pork byproducts, which Thomas, because of his religious beliefs, cannot ingest. ECF No. 3 at 8.

From July 29, 2021, to August 5, 2021, "all employees" of the jail that interacted with Thomas refused to provide him with medical treatment even though they knew of his ailments. ECF No. 3 at 8. At his processing, over 10 unidentified officers participated in "and/or allowed" Thomas to be tortured by putting him in a holding cell; choking him; attempting to break his arms and fingers so that he would submit to fingerprinting; using handcuffs to burn and scar his wrists and digging their nails into his arms; putting a black bag over his head during the "assault"; not letting him use his free phone call; putting him in solitary confinement for several hours; and with respect to Grimes in particular, continuing his verbal assault against him. ECF No. 3 at 9.

3. Judicial and Attorney Misconduct

When presented to Magistrate Judge David Antonio Woodruff, Thomas attempted to "discharge" the charges against him by referencing a March 2016 "United States Department of Justice publication." ECF No. 3 at 9. Judge Woodruff did not accept Thomas's argument on this matter and "fraudulently attested" that Thomas is an African-American United States citizen, which stripped Thomas of his right to self-determination. ECF No. 3 at 9.

The County Criminal Court No. 5—through Judge Lisa Green Thorpe and Thomas's court-appointed attorneys, Andre Craig Jr. and Jesus Marquez—also wronged Thomas. Craig Jr. was ineffective, incompetent, and failed to comply with Thomas's "instructions." ECF No. 3 at 9. Due to Craig Jr.'s misrepresentations, Thomas received a "no show" for a court date. ECF No. 3 at

10. Craig Jr., Judge Thorpe, and County Criminal Court 5 conspired to deprive Thomas of his Sixth Amendment right to counsel and a fair trial by issuing bonds without his "participation" and appointing Marquez to represent him without his consent or knowledge after Craig Jr. was promoted to another position. ECF No. 3 at 10.

### 4. Request for a writ of *quo warranto*, termination of criminal proceedings, and requested relief

Thomas then asked Texas Attorney General Ken Paxton to file a writ of *quo warranto* to test the right of all the state actors involved in his underlying criminal proceedings to hold their respective offices. ECF No. 3 at 10. But Paxton, through assistant attorney generals Thomas Albright and David Hacker, refused to instigate *quo warranto* proceedings on Thomas's behalf. ECF No. 3 at 10-11.

In March 2022, the State dismissed the criminal case against Thomas. *See Texas v. Deuntae Thomas*, M2116993 (Dallas Cnty. Crim. Ct. 5, March 9, 2022).

In these federal proceedings, Thomas seeks monetary damages, a *quo warranto* judgment removing the defendants from office who were involved in his underlying criminal proceedings, and mandamus relief requiring state officials to take various actions. *See* ECF No. 3 at 31; ECF No. 10 at 15-16.

## Legal Standards and Analysis

Thomas's pleadings are subject to preliminary screening under 28 U.S.C. § 1915(e)(2), pursuant to which a district court may summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2)

fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

1. Thomas lacks standing to assert a *quo warranto* action, and this Court lacks jurisdiction to mandamus state actors.

Thomas seeks *quo warranto* relief under Texas law. *See, e.g.*, ECF No. 3 at 28-30; ECF No. 10 at 14. The purpose of a *quo warranto* proceeding is to question the right of a person or corporation, including a municipality, to hold a public franchise or office. *Alexander Oil Co. v. City of Seguin*, 825 S.W.2d 434, 436-37 (Tex. 1991). *Quo warranto* proceedings are brought in the name of the State by the attorney general or a district or county attorney. TEX. CIV. PRAC. & REM. CODE §§ 66.001-03; *see also McKinley v. Federal Bureau of Prisons*, 2007 WL 2480323, at *5 (E.D. Tex. Aug. 30, 2007) (noting that only the government can bring a *quo warranto* proceeding).

Thomas therefore lacks standing to seek *quo warranto* relief and his request for the same should be dismissed for lack of subject matter jurisdiction.

*Lee v. Verizon Commc'ns. Inc.*, 954 F.Supp.2d 486, 496 (N.D. Tex. 2013) (noting that standing is an issue of subject matter jurisdiction) (citations omitted).

Thomas also appears to seek mandamus relief. *See generally* ECF No. 3; ECF No. 10 (pleadings stylized as affidavits in support of mandamus relief). But federal courts do not have jurisdiction to issue a writ of mandamus against a state actor or state agencies, so such a request should be denied. *Moye v. Clerk, Dekalb Cty. Superior Court*, 474 F.2d 1275, 1276 (5th Cir. 1973).

2. <u>Thomas's claims against nonjural entities should be dismissed.</u>

Under the Federal Rules of Civil Procedure, a party in a lawsuit must have the capacity to be sued. FED. R. CIV. P. 17(b). "The capacity of an entity to be sued is 'determined by the law of the state in which the district court is held.'" *Hutchinson v. Box*, 2010 WL 5830499, at *1 (E.D. Tex. Aug. 20, 2010) (quoting FED. R. CIV. P. 17(b)), *rec. accepted* 2011 WL 839864 (E.D. Tex. Feb. 17, 2011). "A plaintiff has the burden of showing that a . . . department has the capacity to be sued. However, if a plaintiff fails to allege or demonstrate that such a defendant is a separate legal entity having jural authority, then claims against the entity should be dismissed as frivolous and for failing to state a claim." *Rhodes v. Lewisville Police Dep't*, 2020 WL 8513792, at *3 (E.D. Tex. Dec. 2, 2020), *rec. accepted* 2021 WL 515398 (E.D. Tex. Feb. 11, 2021).

Here, Thomas sues the DART Police, the Lew Sterrett Jail, the Dallas County Sheriff's Department, the Frank Crowley Courts Building, and County Criminal Court No. 5. ECF No. 3 at 1-2. Courts routinely find that these entities—

or entities like them—lack a separate legal existence and the capacity to be sued. *See*, *e.g.*, *Johnson v. Dallas Police Dept.*, 2014 WL 309195, at *2 (N.D. Tex. Jan. 28, 2014) (Dallas Police Department is nonjural entity that is not subject to suit); *Fleming v. Sixth Dist. Court of Lamar Cnty.*, 2020 WL 8299710, at *2 (E.D. Tex. Dec. 23, 2020) (Sixth District Court of Lamar County is nonjural county that is not subject to suit); *Marshall v. Abbott*, 2022 WL 671009, at *3 (E.D. Tex. Feb. 4, 2022), *rec. accepted* 2022 WL 659159 (E.D. Tex. Mar. 4, 2022) (county sheriff's office is a nonjural entity that is not subject to suit); *West v. Lew Sterrett Just. Cnt. of Dallas Cnty.*, 2015 WL 1651539, at *3 (W.D. Tex. Apr. 14, 2015) ("Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit—and specifically that the Lew Sterrett Justice Center is not a jural entity subject to suit.").

Therefore, Thomas's claims against the DART Police, the Lew Sterrett Jail, the Dallas County Sheriff's Department, the Frank Crowley Courts Building, and County Criminal Court No. 5. are meritless and should be dismissed.

3. Thomas fails to state a claim under 42 U.S.C. § 1983.

Thomas purports to bring claims under 42 U.S.C. § 1983. *See*, *e.g.*, ECF No. 3 at 5; ECF No. 10 at 9. "Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." 42 U.S.C. § 1983." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999).

### a. False Arrest

The Court understands Thomas to claim that DART officers Villafuerte, Grimes, and Neal arrested him without probable cause in violation of the Fourth Amendment.[3] *See* ECF No. 3 at 5-8. The Constitution "contemplates searches and seizures based 'upon probable cause.'" *United States v. Bass*, 996 F.3d 729, 737 (5th Cir. 2021) (quoting U.S. CONST. AMEND IV.). Accordingly, "[t]he Fourth Amendment protects citizens from false arrests—that is, arrests unsupported by probable cause." *Defrates v. Podany*, 789 F. App'x 427, 431 (5th Cir. 2019) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)). And "[a] constitutional claim for false arrest, which [Thomas] brings through the vehicle of § 1983, 'requires a showing of no probable cause.'" *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019) (quoting *Club Retro*, 568 F.3d at 204).

"The United States Supreme Court has defined probable cause as the 'facts and circumstances within the officer's knowledge that are sufficient to warrant a

---

[3] Thomas never specifies whether he is suing the defendants in their individual or official capacities. When the complaint is unclear as to whether the defendants are being sued in their individual or official capacities, "the Court must look to the substance of the claims, the relief sought, and the course of the proceedings to determine in which capacity the defendant is sued." *Hopkins v. Guzman*, 2007 WL 2407247 at *4 (E.D. La. Aug. 17, 2007) (citing *United States ex rel. Adrian v. Regents of Univ. of Ca.*, 363 F.3d398, 402-03 (5th Cir. 2004)). Because Thomas seeks compensatory damages (among other things), and because many of the official capacity suits would be duplicative of claims Thomas asserts directly against the municipalities for whom the defendants work, the Court assumes he is suing defendants in their individual capacities. *See Thomas v. Dallas Hous. Auth.*, 2015 WL 2192785, at *5 (N.D. Tex. May 11, 2015) (factoring the plaintiff's request for compensatory damages in determining the suit was an individual capacity suit).

prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Piazza v. Mayne*, 217 F.3d 239, 245-46 (5th Cir. 2020) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). "The facts must be known to officer at the time of the arrest" and "must be particularized to the arrestee." *Club Retro*, 568 F.3d at 204 (citations omitted). And a court "will find that probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense." *Id.* (citation omitted).

Thomas has not alleged that the officers lacked probable cause to arrest him. To the contrary, it is clear from his allegations that the officers could have arrested him for violating Texas's resisting arrest statute, which says that "[a] person commits an offense if he intentionally prevents or obstructs a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction from effecting an arrest, search, or transportation of the actor or another by using force against the peace officer or another." TEX. PENAL CODE ANN. § 38.03(a). Further, it is no defense to prosecution under the resisting arrest statute that the arrest or search was unlawful. *Id.* at § 38.03(b).

Thomas admits that he used force to resist arrest (ECF No. 3 at 8), so there was probable cause to arrest him. *See, e.g.*, *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir. 2013) (noting that "the act of resisting can supply probable cause of the arrest itself"); *see also Ayala v. Aransas Cnty.*, 777 F. App'x 100, 106 (5th Cir.

2019) (finding probable cause to arrest under Section 38.03(a) where it took multiple deputies to handcuff the defendant/plaintiff). That he believed the arrest to be unlawful—indeed, even if it was—is immaterial. And even though Thomas claims that the officers "impersonated" DART officers, he provides no facts supporting that conclusory allegation. Though the resisting arrest statute requires the defendant to "know" the person he is resisting is a peace officer, probable cause is judged from the viewpoint of a reasonable officer, and there is nothing to indicate that a reasonable officer would have known about or should have respected Thomas's unfounded belief about the legitimacy of the officer's authority.

Finally, the Court notes that Thomas peppers his pleadings and submissions with terminology reminiscent of the sovereign citizen theory of relief.[4] But sovereign citizen legal arguments and theories "are not valid in the courts of the United States" and have been overwhelmingly rejected for years as frivolous and "indisputably meritless." *Mack*, 2017 WL 6756667, at *3-4; *see also Watson v. Tex. State Univ.*, 829 F. App'x 686, 686 (5th Cir. 2020).

---

[4] "So-called sovereign citizens argue that, though they are born and reside in the United States, they are their own sovereigns and are not United States citizens." *Mack v. Sweet*, 2017 WL 6756667, at *3-4 (N.D. Tex. Dec. 4, 2017), *rec. accepted* 2017 WL 6729630 (N.D. Tex. Dec. 28, 2017) (citing *Gravatt v. United States*, 100 Fed. Cl. 279, 282 (2011)). "They claim as grounds for this belief: the Uniform Commercial Code, maritime and admiralty law, the idea of strawman trusts, and Bible verses." *Mack*, 2017 6756667, at *3 (citing *Mason v. Anderson*, 2016 WL 4398680, at *2 (S.D. Tex. Aug. 18, 2016)). "Sovereign citizens often attempt to use these beliefs to . . . 'derail criminal proceedings.'" *Westfall v. Davis*, 2018 WL 2422058, at *2 (N.D. Tex. May 4, 2018), *rec. accepted* 2018 WL 2414794 (N.D. Tex. May 29, 2018) (citation omitted).

Thus, to the extent that Thomas claims the DART officers lacked jurisdiction to arrest him because he is a sovereign citizen and beyond their jurisdiction, this argument is meritless.

In sum, Thomas has not alleged facts showing the absence of probable cause to arrest him. His false arrest claim should be dismissed.

### b. Unreasonable Search.

Thomas claims that, after he was put into a squad car, "they" searched the contents of his personal belongings, including his backpack. ECF No. 3 at 8. But he never specifies which defendants did what in relation to the search.

"[A] plaintiff bringing a section 1983 action must specify the personal involvement of each defendant." *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992). And "a complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct." *Bowling v. Willis*, 2019 WL 2517090, at *9 (E.D. Tex. Apr. 2, 2019) (citation omitted), *rec. accepted* 2019 WL 3712025 (E.D. Tex. Aug. 7, 2019); *see also Springs v. Sec'y Diaz*, 2021 WL 2184851, at *6 (S.D. Cal. May 28, 2021) (dismissing the *pro se* plaintiff's § 1983 claims because the complaint "fails to contain individualized allegations against these defendants regarding their involvement"); *see also Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011) ("As we recently reiterated, 'it is particularly important' in a § 1983 case brought against 'a number of government actors sued in their individual capacity

. . . that the complaint make clear exactly who is alleged to have done what to whom . . . as distinguished from collective allegations.'") (citation omitted).

Here, because Thomas does not explain what role each DART officer had in the alleged search, his allegations are insufficient, and his unreasonable search claim should be dismissed.

### c.  Constitutional Right Not to Wear a Face Covering

Thomas also seems to complain that the DART officers violated his constitutional rights by ordering him to either comply with the mandate to wear a face covering or to get off the bus. But Thomas fails to identify any authority for the proposition that there is a fundamental constitutional right not to wear a face covering during a global pandemic, and numerous courts have found to the contrary. *See, e.g., Doe v. Franklin Square Union Free Sch. Dist.*, 568 F.Supp.3d 270, 288 (E.D.N.Y. 2021); *Miranda on behalf of M.M. v. Alexander*, 2021 WL 4352328, at *4 (M.D. La. Sept. 24, 2021); *Whitfield v. Cuyahoga Cnty. Pub. Library Found.*, 2021 WL 1064360, at *2 (N.D. Ohio May 17, 2021). This claim should be dismissed for failure to state a claim.

### d.  Deliberate Indifference to Medical Needs

Thomas claims that Defendant Uzo A. Kunne—a nurse practitioner at the jail—deprived him of medical treatment, including medication for his type 2 diabetes and hypertension, because Thomas would not sign a "release form in a manner and fashion to their liking." ECF No. 3 at 8.

This is a medical care claim that is governed by the "deliberate indifference" standard of the Eighth Amendment to the United States Constitution. U.S. CONST. AMEND. VIII; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). To establish a constitutional violation, Thomas must show that the defendant acted with deliberate indifference to his medical needs such as to cause the "unnecessary or wanton infliction of pain." *Estelle*, 429 U.S. at 106. This requires proof that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk. *Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir. 1996) (citing *Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (citations omitted).

Here, Thomas refused to sign a release form and therefore declined treatment. Courts have rejected medical indifference claims in such circumstances. *See, e.g., Hernandez v. Palakovich*, 2017 WL 511232, at *9 (M.D. Pa. Feb. 8, 2017) ("Generally, an inmate's refusal to receive treatment precludes an inmate from establishing that treating medical personnel exhibited deliberate indifference to his medical needs.") (collecting cases); *Bruce v. Smith Unit. Med. Dep't*, 2002 U.S. Dist. LEXIS 8686 (N.D. Tex. May 16, 2002) (where the inmate refused to sign a release form and told member of the medical staff that he would

15

"see [her] in federal court," the inmate was not entitled to relief since his refusal to execute the form prevented the medical staff from administering the treatment the inmate desired); *Smith v. Black Hawk Cnty. Jail*, 2008 WL 538448, at \*10 (N.D. Iowa Feb. 25, 2008) (rejecting deliberate indifference claim where the defendants' attempts to provide medical treatment were "impeded" when he refused to sign consent to treatment form).

Thomas also complains that he was denied access to his medication of choice and that Kunne tried to "force" him to ingest another medication that contained pork byproduct. But an inmate's disagreement with a course of treatment is not sufficient to establish deliberate indifference. *See, e.g., Kennedy v. Potter*, 344 F. App'x 987, 990 (5th Cir. 2009) (prisoner's disagreement over the next steps in his medical treatment is not sufficient to establish deliberate indifference).[5]

---

[5] Thomas also vaguely contends that giving him a medication with pork violates his "religious beliefs." ECF No. 3 at 8. The Court has located no case finding a plausible First Amendment claim based on a prison's administration or attempted administration of a medication containing a religiously objectionable substance when the plaintiff presents for treatment with medical complaints. In *Abdur-Raqiyb v. Erie Cnty. Med. Ctr.*, 536 F.Supp.2d 299 (W.D.N.Y. 2008), for example, the court rejected a claim that a Muslim inmate's First Amendment rights were violated by the administration of pork-based drugs when the plaintiff was complaining of chest pains, noting that "[u]nder the circumstances here, defendants could have exposed themselves to liability had they *not* administered the tests and medications in question." (emphasis in original). Similarly here, Thomas fails to plausibly allege the availability of an alternative medication not containing pork byproduct, and Kunne might have been exposed to liability had the medication not been administered. To the extent that Thomas is raising a First Amendment claim, it is meritless.

Thomas's deliberate indifference claim against Kunne is meritless and should be dismissed.

### e. *"All Officers that Participated in the Cruel and Inhumane Treatment"*

Thomas sues "All Officers that Participated in the Cruel and Inhumane Treatment" that he allegedly received at the jail. ECF No. 3 at 3. He claims that this undifferentiated and unnamed mass of officers refused to provide medical treatment related to his diabetes, hypertension, and a yeast infection; failed to give him his *Miranda rights*; participated in, or failed to stop, torture during his processing; processed him "illegally" before he had a chance to see the magistrate judge; choked him while he was handcuffed; attempted to break his arms and fingers to make him submit to fingerprinting; used handcuffs to scar and burn his wrists and dug their nails into his arms; put a "black bag" over his head while the "assault" was ongoing; and put him in solitary confinement for several hours. *See* ECF No. 3 at 8-9.

But, again, Thomas does differentiate his allegations as to each potential defendant. ECF No. 3 at 8.[6] This is fatal to a Section 1983 claim. *See*, *e.g.*, *Bailey v. Willis*, 2018 WL 3321461, at \*12 (E.D. Tex. Jan. 11, 2018) (dismissing § 1983 claim where the plaintiff, throughout his complaint, referred to "'defendants' without specifying each individual defendant's involvement or conduct, noting

---

[6] The only exception is his claim that A. Grimes continued his verbal "assault" against him. ECF No. 3 at 9. However, this does not state a claim under Section 1983. *See*, *e.g.*, *Bender v. Brumley*, 1 F.3d 271, 274 (5th Cir. 1993) ("Mere allegations of verbal abuse do not present actionable claims under § 1983.").

that "[a] complaint does not satisfy the requirements of *Iqbal* and *Twombly* by lumping together all defendants, while providing no factual basis to distinguish their conduct") (quoting *Del Castillo v. PMI Holdings N. Am. Inc.*, 2015 WL 3833447, at \*6 (S.D. Tex. June 22, 2015)); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings Section 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*") (emphasis in original).

Thus, Thomas's claims against "All Officers that Participated in the Cruel and Inhumane Treatment" should be dismissed.

### f.  *Judicial Immunity*

Thomas complains that Magistrate Judge Woodruff did not allow him to "enforce [his] right of discharge as outlined by the Civil Rights Division of the Department of Justice" and "stripped" his right of self-determination away by classifying him as an African-American United States citizen even though Thomas does not identify as either an African American by lineage or a United States citizen. ECF No. 3 at 9. Again, to the extent these claims are premised upon Thomas's belief that he is a sovereign citizen they are frivolous and should be dismissed. *See*, *e.g.*, *Westfall*, 2018 WL 2422058, at \*2.

Further, it is well-established that judges are generally protected by absolute immunity for judicial actions they take within the scope of their jurisdiction. *See Stump v. Sparkman*, 435 U.S. 349, 356 (1978); *Mireles v. Waco*,

18

502 U.S. 9, 9-10 (1991); *Davis v. Tarrant Cnty., Tex.*, 565 F.3d 214, 221-22 (5th Cir. 2009); *Sparks v. Duval Cty. Ranch Co., Inc.*, 588 F.2d 124, 125 (5th Cir. 1979). In fact, "[j]udicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (citing *Mireles*, 502 U.S. at 11). And, "[t]he fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991).

Here, Thomas seeks damages from Judge Woodruff for rulings or decisions that the judge made in court proceedings. These are judicial acts that fall within the scope of judicial immunity. *See Laird v. Spencer*, ---F.Supp.3d---, 2020 WL 1083826, at *5 (M.D. La. Mar. 6, 2020) ("Written reasons for ruling as well as oral rulings made in the course of a proceeding in court are judicial acts that fall within the scope of judicial immunity.") (citing *Hammond v. Plattsmier*, 2008 WL 1766678, at *2 (W.D. La. Apr. 17, 2008) ("Judge Jeansonne's rulings (as well as his written and oral reasons therefor) are wholly judicial acts . . . ").

And while it is true that a judge is not immune for actions that, though judicial in nature, are taken in the complete absence of all jurisdiction, *see Mireles*, 502 U.S. at 11-12, Thomas presents no allegations showing a lack of jurisdiction other than his frivolous sovereign citizenship theory.

Further, judicial immunity is not overcome simply because Thomas characterizes Judge Woodruff's conduct as "fraudulent." ECF No. 3 at 9. *See, e.g., Colter v. Holmberg*, 2017 WL 6886090, at *2 (D. Ariz. Nov. 7, 2017).

As for Judge Thorpe, Thomas alleges that she conspired with his court-appointed attorney—Andre Craig Jr.—to deprive him of his right to effective assistance of counsel under the Sixth Amendment by approving Thomas's bonds and appointing new counsel to represent him without his knowledge or permission when Craig was "promoted to the County Criminal Court No. 9." ECF No. 3 at 10.

But, again, these are judicial acts that fall within the scope of judicial immunity, and Thomas's sovereign-citizen-based argument that Judge Thorpe lacked jurisdiction over his criminal proceedings is frivolous. *See, e.g., Davis v. Tarrant Cnty., Texas*, 565 F.3d 214, 223 (5th Cir. 2009) ("The appointment of counsel for indigent defendants is a normal judicial function.") (citations omitted); *see also Cain v. City of New Orleans*, 184 F.Supp.3d 379, 390 (E.D. La. 2016) ("It is undisputed that issuing arrest warrants and setting bail are judicial functions, typically performed by a judge in his or her judicial capacity.") (collecting cases). Nor is immunity overcome by Thomas's conclusory allegations of a conspiracy. *See, e.g., Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) ("The fact that it is alleged that the judge acted pursuant to a conspiracy and committed grave procedural errors is not sufficient to avoid absolute judicial immunity.") (citations omitted).

For these reasons, Thomas's claims against Judges Woodruff and Thorpe are meritless and should be dismissed.

### g. Court-Appointed Counsel and Prosecutor

Thomas also sues his court-appointed attorneys Andre Craig Jr. and Jesus Marquez, claiming that they were incompetent and ineffective, and, in the case of Craig Jr., conspired with Judge Thorpe and the County Criminal Court No. 5. ECF No. 3 at 9-10.

But Thomas's court-appointed attorneys are not state actors for purposes of Section 1983. *See, e.g., Sanders v. Settle*, 2020 WL 1808505, at *2 (E.D. Tex. Feb. 19, 2020) ("The conduct of a private person, such as Kevin Settle—Plaintiff's court-appointed defense counsel—is not [] state act[tion] under 42 U.S.C. § 1983.") (citing *Briscoe v. LaHue*, 460 U.S. 325, 329 (1983)). Thus, Thomas's Section 1983 claims against them should be dismissed.

Thomas also sues Dallas County District Attorney John Creuzot, but it is not clear why. To the extent that Thomas seeks damages because Coleman brought charges against him, Fifth Circuit decisions applying Supreme Court precedent make clear that "[p]rosecutors enjoy absolute immunity for acts taken to initiate the prosecution," *Rykers*, 832 F.2d at 897 (citation omitted), and that this "[a]bsolute immunity shelters prosecutors even when they act 'maliciously, wantonly or negligently.'" *Id.* (quoting *Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985)).

Thus, Thomas's claim against Creuzot is meritless and should be dismissed.

### h. *Texas Attorney General*

Thomas complains that Texas Attorney General Kenneth Paxton and assistant attorney generals Thomas Albright and David Hacker are liable for not bringing a *quo warranto* action on his behalf challenging the qualifications of those involved in Thomas's arrest and prosecution. ECF No. 3 at 10.

But, while Thomas cites a statute that allows the Attorney General to initiate *quo warranto* proceedings on behalf of an individual (Section 66.02 of the Texas Civil Practice and Remedies Code), he cites nothing that obligates the Attorney General to do so. Thus, because Thomas had no right to have a *quo warranto* proceeding initiated on his behalf, his claims against Paxton, Albright, and Hacker should be dismissed.

### i. *Monell Claims*

Thomas also sues DART, the City of Dallas, and Dallas County. ECF No. 3 at 2-3. Under *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658 (1978), a governmental entity can be sued and subjected to monetary damages and injunctive relief under 42 U.S.C. § 1983 only if its official policy or custom causes a person to be deprived of a federally protected right.[7] *Board of the Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 694. A

---

[7] DART has been recognized as a municipal entity subject to suit under 42 U.S.C. § 1983. *Graham v. Dallas Area Rapid Transit*, 288 F.3d 711, 725 (N.D. Tex. 2017) (collecting cases).

governmental entity cannot be liable for civil rights violations under a theory of *respondeat superior* or vicarious liability. *Id.*

"Under the decisions of the Supreme Court and [the Fifth Circuit], municipal liability under section 1983 requires proof of three elements: a policy maker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* (citing *Monell*, 436 U.S. at 694); *see also Valle v. City of Houston*, 613 F.3d 536, 541-42 (5th Cir. 2010); *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). Official municipal policy includes the decisions of the government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law. *Monell*, 436 U.S. at 691-95.

"The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City, Police Dept's*, 130 F.3d 162, 167 (5th Cir. 1997) (citing *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992)); *accord Piotrowski*, 237 F.3d 578-79. "[A] complaint must contain either direct allegations on every material point necessary to sustain recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted).

Thomas does not allege that a municipal policy or custom caused him any constitutional injury. He appears to seek relief based on a theory of vicarious liability, which is insufficient to state a claim.

And further, as discussed throughout this recommendation, there is no underlying constitutional claim, so there would be no basis for *Monell* liability even if Thomas alleged the requisite policy or custom. *See, e.g., Albert v. City of Petal*, 819 F. App'x 200, 203 (5th Cir. 2020) (explaining that there could be no *Monell* claim without an underlying constitutional violation).

### j. *Eleventh Amendment*

Thomas also names the state of Texas as a defendant, presumably seeking monetary damages. But the Supreme Court has held that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 472 U.S. 159, 169 (1985) (citing *Ford Motor Co. v. Dep't of Treasury of Indiana*, 332 U.S. 459, 464 (1945)). Section 1983 "was not intended to abrogate a State's Eleventh Amendment immunity." *Id.* (citing *Quern v. Jordan*, 440 U.S. 332 (1979); *Edelman v. Jordan*, 415 U.S. 651 (1974)). And Thomas has not pointed to any other waiver or valid congressional override of Texas's sovereign immunity; thus, the Eleventh Amendment bars his claims for monetary damages against Texas.

### k. *Other Defendants*

Thomas also named Dallas County Sheriff Marian Brown, Sergeant K. Wayvines, Dallas County Clerk John Warren, and Dallas County Deputy Clerk

Breanne Davis as defendants. ECF No. 3 at 3. But there are no factual allegations related to these defendants. And Section 1983 liability requires either personal involvement on the part of the defendant or that a causal connection exists between an act of the official and the alleged constitutional violation. *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981).

As Thomas fails to allege their personal involvement or a causal connection between their acts and an alleged constitutional violation, to the extent that Thomas is suing Sheriff Brown, Sergeant Wayvines, or Dallas County clerks Warren and Davis under Section 1983, those claims should be dismissed as meritless.

4. Thomas fails to state a claim under 42 U.S.C. §§ 1985, 1986.

Thomas mentions 42 U.S.C. § 1985, which creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights. *Marceaux v. Lafayette City-Parish Consol. Gov't*, 921 F.Supp.2d 605, 642 (W.D. La. 2013). But Thomas's allegations of a conspiracy are conclusory and insufficient to state a plausible claim.

The essence of a conspiracy is an understanding or agreement between the conspirators. *Holdiness v. Stroud*, 808 F.2d 417, 425 (5th Cir. 1987). "It is well settled in the Fifth Circuit that 'mere conclusory allegations of conspiracy cannot, absent reference to materials facts, state a substantial claim of federal conspiracy.'" *Zuniga v. Masse Contracting, Inc.*, 290 F.Supp.3d 581, 587 (E.D.

La. 2017) (quoting *McAfee v. 5th Circuit Judges*, 884 F.2d 221, 222 (5th Cir. 1989)).

Here, Thomas does not allege facts showing that any named defendants entered into any type of agreement, much less one that would run afoul of Section 1985. Because Thomas's allegations of a conspiracy are conclusory, his Section 1985 claim should be dismissed.

As for a claim under 42 U.S.C. § 1986, that statute provides a cause of action against those who neglect or refuse to prevent wrongful acts committed pursuant to a conspiracy under 42 U.S.C. § 1985. *See* 42 U.S.C. § 1986. Therefore, "a valid § 1985 claim is a prerequisite to a § 1986 claim . . . ." *Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000).

Because Thomas fails to state a claim under Section 1985, he necessarily fails to state one under Section 1986.

5.  <u>Thomas's claims for relief under federal criminal statutes are meritless</u>.

Thomas also references various criminal statutes including treason, 18 U.S.C. § 1918; conspiracy against rights, 18 U.S.C. § 241; deprivation of rights under color of law, 18 U.S.C. § 242; and 18 U.S.C. § 245, which prohibits the violent interference with federally protected civil rights. *See*, *e.g.*, ECF No. 3 at 4, 7.

To the extent that Thomas seeks to bring an action under a federal criminal statute, "[p]rivate citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, 2010 WL 446076, at

*2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 301 (5th Cir. 2003) (per curiam)).

Thus, any claims Thomas is making pursuant to federal criminal statutes are meritless and should be dismissed.

6. <u>Any other claims that Thomas is trying to make are conclusory and should be dismissed.</u>

Thomas references, in some way, essentially every constitutional amendment and many constitutional articles. *See*, *e.g.*, ECF No. 10 at 5-6. He also references a variety of treaties, regulations from the Code of Federal Regulations, and a smattering of other federal statutes. *See* ECF No. 10 at 6-9. He supplies absolutely no facts, however, supporting any causes of action other than those discussed above. So, to the extent that Thomas is trying to raise a claim in relation to any federal provision not addressed above, it should be dismissed.

**Leave to Amend**

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. But "granting leave to amend is not required if the plaintiff has

already pleaded his 'best case.'" *Bryant v. Wells Fargo Bank*, 2018 WL 4290791, at *4 (N.D. Tex. Aug. 23, 2018) (citing *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017)), *rec. accepted* 2018 WL 4283556 (N.D. Tex. Sept. 7, 2018).

Here, Thomas submitted multiple pleadings containing his allegations. He was also given the chance to further explain his claims through an MJQ, but he refused to offer any substantive response. He has therefore had ample opportunity to plead his best case, and further leave to amend is not necessary or warranted.

## Recommendation

Thomas's claims for mandamus and *quo warranto* relief should be dismissed without prejudice for lack of subject matter jurisdiction. Thomas's claims for monetary damages against the State of Texas should be dismissed without prejudice for lack of subject matter jurisdiction. Thomas's remaining claims should be dismissed pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim upon which relief can be granted.

SO RECOMMENDED

Signed December 29, 2022

_____

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers